﻿Citation Nr: AXXXXXXXX
Decision Date: 09/30/19 Archive Date: 09/27/19

DOCKET NO. 190314-6379
DATE: September 30, 2019

ORDER

Entitlement to service connection for bilateral pes planus is denied.

Entitlement to service connection for a lower back injury is denied.

Entitlement to service connection for a right hip injury is denied.

Entitlement to service connection for a right shoulder injury is denied.

FINDINGS OF FACT

1. Bilateral pes planus was noted upon entry and was not worsened during or as a result of service.

2. The preponderance of the evidence is against finding that the Veteran’s current low back injury is related to an in-service injury or disease. 

3. The preponderance of the evidence is against finding that the Veteran’s current right hip injury is related to an in-service injury or disease. 

4. The preponderance of the evidence is against finding that the Veteran’s current right shoulder injury is related to an in-service injury or disease. 

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for bilateral pes planus have not been met. 38 U.S.C. §§ 1110, 1111, 1153; 38 C.F.R. § 3.303.

2. The criteria for entitlement to service connection for a lower back injury have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

3. The criteria for entitlement to service connection for a right hip injury have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

4. The criteria for entitlement to service connection for a right shoulder injury have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served in the Army from September 1989 to September 1997. 

This matter comes before the Board of Veterans’ Appeals (Board) following an October 2016 rating decision of the Department of Veterans Affairs (VA), which in relevant part, denied entitlement to service connection for bilateral pes planus, a low back injury, a right hip injury, and a right shoulder injury. The Veteran submitted a notice of disagreement (NOD) in August 2017. However, in June 2018, he opted into the Rapid Appeals Modernization Program (RAMP), via the Supplemental Claim lane, thereby withdrawing his active appeal. The RO issued a RAMP decision in February 2019, continuing the previous denials. In March 2019, the Veteran submitted a NOD and selected Direct Review by a Veterans Law Judge. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2 (d)).

Service Connection

The law provides that service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active military service. 38 U.S.C. § 1110; 38 C.F.R. §§ 3.303, 3.304. Service connection may be granted for any disease diagnosed after discharge when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Generally, establishing service connection requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999). 

A veteran will be considered to have been in sound condition when examined and accepted for service, except as to disorders noted on entrance into service, or when clear and unmistakable evidence demonstrates that the disability existed prior to service and was not aggravated by service. 38 U.S.C. § 1111; 38 C.F.R. § 3.304(b). Only such conditions as are recorded in the examination reports are to be considered as “noted.” See Paulson v. Brown, 7 Vet. App. 466, 470 (1995).

A pre-existing injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease. 38 U.S.C. § 1153; 38 C.F.R. § 3.306(a). This standard is further explained in 38 C.F.R. § 3.306 (b, which provides that clear and unmistakable evidence (obvious or manifest) is required to rebut the presumption of aggravation where the pre-service condition underwent an increase in severity during service. That notwithstanding, aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during, and subsequent to service. 38 C.F.R. § 3.306(b). In other words, the presumption of aggravation only arises “where the pre-service disability underwent an increase in severity during service.” Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004); Hunt v. Derwinski, 1 Vet. App. 292, 296 (1991).

If the presumption of aggravation arises under 38 U.S.C. § 1153, then the burden shifts from the Veteran, to the government to rebut by clear and unmistakable evidence the pre-existing condition was not aggravated during service, or by establishing that any increase in disability is due to the natural progression of the pre-existing condition. 38 U.S.C. § 1153; 38 C.F.R. § 3.306; Cotant v. Principi, 17 Vet. App. 117, 131 (2003); VAOPGCPREC 3-03, 69 Fed. Reg. 29178 (2004); see also Wagner and Hunt, both supra.

In deciding a claim based on aggravation, the question turns on whether there has been any measurable worsening of the condition during service, and then on whether such worsening constitutes an increase in disability. Browder v. Brown, 5 Vet. App. 268, 271 (1993); Hensley v. Brown, 5 Vet. App. 155, 163 (1993). Temporary of intermittent flare ups of a pre-existing condition during service are not sufficient to be considered aggravation unless the underlying condition, as contrasted to symptoms, has worsened. Crowe v. Brown, 7 Vet. App. 238, 247-48 (1994); Hunt v. Derwinski, 1 Vet. App. at 296-97.

1. Entitlement to service connection for bilateral pes planus 

The Veteran asserts that his bilateral pes planus was aggravated by his military service. Specifically, he contends that marching, running, other PRT requirements and military boots caused him to complain about his condition. 

The Board finds that the evidence does not demonstrate that the Veteran’s bilateral pes planus was aggravated during service beyond the natural progression of the disability. 

The Veteran’s entrance examination indicates mild pes planus with asymptomatic symptoms. However, service treatment records are negative for any treatment of bilateral pes planus. Pes planus was noted during his discharge examination in May 1977, but there was no indication that the disability had worsened during service. 

The Board is cognizant of the fact that he denied any symptoms of foot trouble when he entered service, but mentioned “foot trouble” at separation. However, as was explained above, the presence of symptoms is insufficient to establish aggravation. What is required is an actual worsening of the condition. 

Moreover, while the Veteran reported during his January 2019 VA examination that he saw a chiropractor in the past and was prescribed insoles, the Board again notes that having symptoms without an actual worsening is insufficient. This is particularly relevant here, as he did not report symptoms related to pes planus again until his VA examination in 2019, about 22 years post-discharge. 

In fact, throughout the claim, the Veteran has not reported specifically in what ways his pes planus worsened beyond what was observed upon entry. The VA examiner in January 2019 noted that there is evidence to indicate the Veteran continued to suffer from the disorder during service, which is typical of the pes planus. However, the progression is not beyond normal progression for this disorder and no evidence of permanent aggravation beyond normal progression is identified. 

Based on the foregoing, the Board concludes that the Veteran’s pre-existing bilateral pes planus did not worsen in severity during his active duty service. While the lay evidence demonstrates that the Veteran’s pes planus became symptomatic during service, this alone is not enough in this case, as there is insufficient evidence of an actual worsening, let alone a worsening beyond the natural progress of the disability, during service. This is further supported by the fact that the Veteran never sought treatment for the newly symptomatic disability during service or following discharge. 

Furthermore, there is no evidence that the Veteran is competent to opine as to the clinical origin of his symptoms during service. This issue is medically complex, as it requires knowledge of the interaction between multiple systems in the body. The Veteran has not been shown to demonstrate the kind of medical expertise that would be required to opine as to the etiology of the in-service symptoms or to say that his symptoms of pain and swelling began as a result of a worsening of his pre-existing pes planus as opposed to some other cause. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). The VA examiner, on the other hand, has the requisite medical expertise and rendered an opinion based upon the evidence of record and supported by a complete rationale. For these reasons, the Board finds the VA examiner’s opinion is of more probative value than that of the Veteran.

The only medical evidence of record regarding a connection between service and pre-existing bilateral pes planus is that of the 2019 VA examiner, which is against the claim. The examiner provided a thorough rationale for the opinion, which relied significantly on the evidence of record, including the lack of treatment or reported symptoms during service and no evidence of permanent aggravation beyond normal progression. 

The Board concludes that the evidence of record demonstrates bilateral pes planus clearly and unmistakably pre-existed service and clearly and unmistakably was not aggravated beyond the natural progression of the disability during military service. Accordingly, the claim for service connection for pes planus is denied.

2. Entitlement to service connection for a lower back injury, right hip injury, and right shoulder injury 

The Veteran asserts that his lower back injury, right hip injury, and right shoulder injury are a result of his military service. 

With respect to the Veteran’s low back, right hip, and right shoulder conditions, the Board concludes that while the Veteran has a current diagnosis of these conditions, the preponderance of the evidence weighs against finding that these conditions began during service or is otherwise etiologically related to an in-service injury, event, or disease. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. §§ 3.303(a), (d), 3.304, 3.307, 3.309. 

In this case, the Veteran’s service treatment records show that the Veteran reported recurrent back pain in his report of medical history in May 1997. However, a review of the Veteran’s service treatment records does not reveal complaints of, treatment for, or a diagnosis of a back condition while in service. In regard to his right hip injury the treatment records reveal the Veteran was seen on November 1, 1991 for a complaint of pain during physical activity involving his right hip. The Veteran reported that he fell on his hip 3 months prior and had pain since. The Veteran was seen for a re-evaluation of his right hip on November 7, 1991, where he complained of the same problem as before and stated that he experienced no relief from prescribed medications and sharp pain and popping were still present. However, the Veteran’s treatment records contain no further complaints or treatment regarding a right hip condition. Further, during his May 1997 separation examination, the Veteran indicated no for bone, joint, or other deformity. A June 1994 treatment record reveals treatment for a right rotator cuff injury that occurred during training when the Veteran fell during a 2 man carry. He was diagnosed with a sprain/strain and prescribed medication and use of an ice pack. While the Veteran indicated yes for painful right shoulder in his May 1997 report of medical history, the medical records do no reveal further complaints or treatment for his right shoulder injury. 

Similarly, the Veteran’s post-service medical evidence does not show symptoms or a diagnosis of a right hip condition, or right shoulder condition until an August 2017 examination at Ribeiro Orthopedic and a lower back condition until his VA examination in January 2019. Thus, the Board observes that there was a 20-year difference between the Veteran leaving service and his right hip and right shoulder conditions and a 22-year difference for his lower back condition. The Board recognizes the Veteran’s statement that he could not afford medical care following his discharge from service and therefore could not seek treatment for his claimed disabilities. However, as discussed above, the Veteran’s service treatment records are silent for continued complaints and treatment of his low back condition, right hip injury, and right shoulder injury. Therefore, continuity of symptoms has not been shown based on the clinical evidence, including for purposes of the chronic disease presumption under 38 C.F.R. § 3.307(a)(3). 

The Board also recognizes the Veteran’s statements that he has experienced these symptoms since service. However, the Board is unable to grant service connection based on these statements alone. Specifically, in addition to the fact that decades went by where there was no indication of treatment, he explicitly denied these symptoms when he underwent his separation physical examination in May 1997. It is reasonable for the Board to presume that, had he been experiencing these disorders at the time, that he would have mentioned them. Therefore, continuity is also not established based on the Veteran’s statements. 

Next, service connection may also be granted when the evidence establishes a medical nexus between his disabilities and his military service. In this case, the Board finds that the weight of the competent evidence does not attribute the Veteran’s conditions to active duty, despite his contentions to the contrary.

In this case, however, the competent evidence fails to establish a relationship between active duty and the Veteran’s current symptoms. Of note, the Board places significant value on the opinions from the January 2019 VA examiner who performed a detailed review of the Veteran’s service and medical treatment records and thorough physical examinations. Specifically, the VA examiner opined that the Veteran’s lower back condition, right hip, and right shoulder injuries are at least as likely as not related to an in-service injury, event, or disease. The examiner provided the rationale that during service, the Veteran’s low back condition and right hip and shoulder injuries were acute only with no evidence of chronicity of care, therefore a nexus has not been established. Additionally, his May 1997 separation examination is silent for any chronic or recurrent back conditions. 

As part of this claim, the Board recognizes the statements from the Veteran, regarding the relationship between his conditions and active service. Nevertheless, while he is competent to provide testimony regarding symptoms of a lower back injury, right hip injury, and right shoulder injury, such as pain, he is not competent to provide a nexus opinion in this case. These issues are medically complex, as it requires knowledge of the interaction between multiple systems in the body and interpretation of complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). Consequently, the Board gives more probative weight to the January 2019 VA examinations. 

Further, the Board notes that the Veteran has not submitted competent medical evidence that his current low back condition, right hip, and right shoulder injuries were due to service nor has any physician provided such a nexus. Therefore, the Board finds that the weight of the competent evidence does not attribute the Veteran’s claimed disabilities to military service.

 

Considering the above discussion, the Board concludes that the preponderance of the evidence is against his claims of service connection for a lower back injury, a right hip injury, and a right shoulder injury. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Therefore, the appeal is denied. The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303

 

 

B.T. KNOPE

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board E. Vample, Associate Counsel

.